**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

---

| | | |
|---|---|---|
| **RICHARD SHAW,**<br><br>**Plaintiff,**<br><br>**- against -**<br><br>**LINCOLN EDUCATIONAL SERVICES CORPORATION; CAREER EDUCATION INSTITUTE**<br><br>**Defendants.** | : | **C.A. No.: 06-233ML** |

---

**DEFENDANTS' RULE 16 STATEMENT**

## I. PRELIMINARY STATEMENT.

Defendant Lincoln Educational Services ("Lincoln"), is a post-secondary educational institute. Career Education Institute ("CEI") was owned and operated by Lincoln, and for the time frame in question, operated an educational institute in Lincoln, Rhode Island.

Plaintiff was first hired as a part-time Instructor of computer courses in March, 2003. In July, 2003 he was promoted to full Instructor, and in November, 2003 he was promoted to Academic Dean. At the time of his hiring and promotions, a different Executive Director was in charge of the Lincoln, Rhode Island campus.

## II. FIRST LEAVE OF ABSENCE REQUESTED.

Plaintiff first sought a medical leave of absence on April 7,2005. He received the disability and FMLA paperwork to fill out from the corporate benefits department on April 11, 2005. His physician filled out the necessary paperwork, and his leave was granted. Plaintiff returned from his leave on April 18, 2005.

## III. LINCOLN ISSUES "EMPLOYEE SUCCESS PLAN" TO ADDRESS DEFICIENCIES IN PLAINTIFF'S PERFORMANCE.

In May, 2005, a new Executive Director, David Waldron, came to the Lincoln, Rhode Island campus. After approximately six weeks, Mr. Waldron met with the campus's managers and professionals to go over their work. On or about June 16, 2005, Mr. Waldron met with Plaintiff, and had prepared a "Employee Success Plan" ("Plan") specific for Plaintiff, covering many areas of Plaintiff's job where Mr. Waldron felt that there were performance issues present and to set up a 30-day plan to have Plaintiff meet performance goals. Mr. Waldron went over the Plan with Plaintiff and explained to him what was expected of an Academic Dean and where he needed to improve his performance and set goals.

Of significant note, the Plan specifically advised Plaintiff that unless substantial improvements were met, further disciplinary measures, up to and including termination, would occur.

## IV. SECOND LEAVE OF ABSENCE REQUESTED.

A day or two after the June 16 meeting with Mr. Waldron, Plaintiff sought a second medical leave. As with the first leave, the documentation was sent from the corporate benefits department to Plaintiff to be appropriately filled out and returned. The "documentation" (such as it was) was received on June 28, 2005. This time, however, Plaintiff only filled out *a portion* of the necessary papers for his requested FMLA leave. His physician also signed off on the incomplete documentation on July 8, 2005.

Of significant note, the Medical Certification Statement ("MCS"), which is to be filled out and signed by the physician, was not filled out at all. Instead, a line was drawn through the document and was marked "Confidential", presumably by either Plaintiff or his physician.

Lincoln, therefore, could not make a determination as to whether or not Plaintiff's condition was such that a "qualifying condition" existed, pursuant to the FMLA statute, sufficient for him to be granted a medical leave of absence.

## V. LINCOLN REPEATEDLY SOUGHT TO OBTAIN THE REQUIRED INFORMATION FROM PLAINTIFF – TO NO AVAIL.

On July 15, 2005, Lincoln requested the medical information be supplied. The letter sent clearly advised Plaintiff that the failure to supply the medical information required would result in a determination that he was on *unapproved* leave and he would be terminated from employment for being out on such unapproved leave. The letter further advised that he either supply the medical information by July 20, 2005, return to work on July 20, 2005, or be terminated. Plaintiff neither sent in the medical information requested nor returned to work.

On July 21 2005, Plaintiff was advised that his employment was terminated due to his unapproved, unauthorized leave of absence.

## VI. PLAINTIFF ALSO FAILED TO SUPPLY MEDICAL INFORMATION TO THE SHORT-TERM DISABILITY INSURER, NOTWITHSTANDING FOUR SEPARATE REQUESTS.

Sun Life Financial was Lincoln's Shot Term Disability Carrier, and on four occasions requested medical information so it could process his STD claim. Letters were sent to Plaintiff on September 5, 2005, September 18, 2005, October 13, 2005 and November 11, 2005. In the last letter (as with the earlier letters), Plaintiff was advised that a determination on his claim could not be made because of lack of information.

Finally, on December 13, 2005, after receiving nothing from Plaintiff, a denial of benefits was issued from Sun Life.

## VII. PLAINTIFF'S FURTHER ALLEGATION THAT HIS ADVERSE EMPLOYMENT ACTION WAS DONE IN RETALIATION IS MERITLESS.

Plaintiff claims that the termination was due to his being identified as a "cooperating witness" who was going to testify on behalf of another Lincoln employee in her unemployment compensation hearing. This too is entirely without merit. Plaintiff was not identified in any such manner to Lincoln (nor was he identified in the decision of the Rhode Island Department of Labor and Training as being a "witness" or "cooperating witness").

Beyond this, the decision to terminate Plaintiff's employment came from Lincoln's corporate offices, located in New Jersey, and was based solely upon the unauthorized absence from work and failure to return. It will be difficult for Plaintiff to show how the corporate officers in New Jersey had knowledge of Plaintiff being "identified" as a cooperating witness. It further would make no sense for Plaintiff to be a "cooperating witness" regarding the unemployment hearing in question, as the terminated employee who was contesting her denial had been involved in failing to pay overtime to certain sales personnel at the Lincoln campus, in violation of federal wage and hour laws as well as company policy. Plaintiff's position at Lincoln could not aide or assist the claimant's case in any way, shape or form, as his job as Academic Dean had nothing to do with the payment or non-payment of overtime to sales people.

## VII. CONCLUSION.

Plaintiff will not be able to prove that his termination was due to anything other than his unauthorized leave of absence and repeated refusals to heed Lincoln's warnings regarding his failures to provide medical documentation or return to work.

Further, it appears that Plaintiff intentionally wanted to go out on medical leave

after receiving the Plan from Mr. Waldron and he knew that his job was in jeopardy for his many performance shortcomings.

Dated: September 20, 2006
Providence, Rhode Island

JACKSON LEWIS LLP
127 Dorrance Street, 4th Floor
Providence, Rhode Island 02903
Telephone: (401) 490-3444

By: /s/ Anthony J. DiOrio (#3419)

ATTORNEYS FOR DEFENDANT

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RICHARD SHAW,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **- against -** | : | **C.A. No.: 06-233ML** |
| | : | |
| **LINCOLN EDUCATIONAL SERVICES CORPORATION; CAREER EDUCATION INSTITUTE** | : | **Certificate of Service** |
| | : | |
| **Defendants.** | : | |

The undersigned hereby certifies that Defendant's Rule 16 Statement has been filed electronically and that it is available for viewing and downloading from the ECF system, this 20th day of September, 2006.

/s/ Anthony J. DiOrio (#3419)

Activity in Case 1:06-cv-00233-ML-DLM Shaw v. Lincoln Educational Services Corporation et al "Rule 16 Statement"

*****NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

**U.S. District Court**

**District of Rhode Island**

Notice of Electronic Filing

The following transaction was received from DiOrio, Anthony entered on 9/20/2006 at 3:56 PM EDT and filed on 9/20/2006

| | |
|---|---|
| **Case Name:** | Shaw v. Lincoln Educational Services Corporation et al |
| **Case Number:** | 1:06-cv-233 |
| **Filer:** | Lincoln Educational Services Corporation<br>Career Education Institute |
| **Document Number:** | 7 |

**Docket Text:**
RULE 16 STATEMENT by Lincoln Educational Services Corporation, Career Education Institute. (DiOrio, Anthony)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096917572 [Date=9/20/2006] [FileNumber=105478-0] [18644f3a9a1e968ba33dca3d459744f546a04f6e828ad4071654dcb258b07233bcf8 4cdb98572c1702e4fc4e1344ff8c2f64d2aa25d2b5f5feb75c3de778a6ba]]

**1:06-cv-233 Notice will be electronically mailed to:**

Anthony J. DiOrio diorioa@jacksonlewis.com

Stephen T. Fanning stephenfanning@msn.com

Rebecca McSweeney mcsweenr@jacksonlewis.com

**1:06-cv-233 Notice will be delivered by other means to:**